**MEMORANDUM**

Linda Wheeler TARPEH–DOE, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

Civ. A. No. 88–0270–LFO.

United States District Court, District of Columbia.

May 11, 1989.

John Jude O'Donnell and Randell Hunt Norton, Thompson, Larson, McGrail, O'Donnell & Harding, Washington, D.C., for plaintiffs.

Wilma A. Lewis, Asst. U.S. Atty., Washington, D.C., for defendants.

OBERDORFER, District Judge.

This case involves the claim of Linda Wheeler Tarpeh–Doe, employed by the Agency for International Development ("AID"), and her infant daughter. The mother was assigned in 1981 to the U.S. Embassy in Monrovia, Liberia, married Nyenpan Tarpeh–Doe, and on May 18, 1982, gave birth in a clinic in Monrovia to Nyenpan Tarpeh–Doe II, the minor plaintiff in this action. On the morning of June 5, 1982, the baby "became rigid," Second Amended Complaint at ¶ 5, and his mother brought him immediately to embassy physicians. Following examination, an embassy physician informed plaintiff that the baby would be medically evacuated to the United States that night. Later in the morning, however, an American missionary physician conducted a further examination, ordered the baby transferred to a Liberian hospital, over the objection of plaintiff, and withdrew the approval to evacuate the baby. Plaintiff continued to demand evacuation, as originally recommended. The baby's condition remained unimproved, and on June 17, 1982, evacuation was finally effected.

In a United States hospital, the baby's illness was correctly diagnosed, and treatment undertaken. The child is presently institutionalized in Denver, Colorado; he is blind, and may suffer permanent brain damage. Plaintiff claims that she was never informed of the practice for State Department and AID employees to be permitted to deliver their babies in the United States, an option which she would have chosen had she known of its existence.

On January 31, 1984, plaintiffs filed an administrative claim with the Department of State for damages and injury. Upon its denial, they filed an action here against the United States and the Secretary of State for negligence and for denial of due process. Now before the court is plaintiffs' claim that the procedure followed by defendant in reviewing plaintiffs' out-of-country claims violates even minimal due process requirements.

Memoranda filed October 25 and December 22, 1988, concluded that the defendant's administrative decision that plaintiff was not entitled to relief was an adjudication that implicated the Due Process Clause of the Fifth Amendment. The December 22 Memorandum observed that "in an adjudication the parties are entitled to know and have an opportunity to address the evidence to be used by the adjudicator in making his decision." Memorandum of December 22, 1988 at 2. The Memorandum invited the plaintiff to file a motion for partial summary judgment "with a view to a direction to defendants to proceed to reconsider plaintiffs' foreign claim after disclosing the evidence to be relied on in that adjudication and affording them an adequate opportunity to comment on and counter that evidence." *Id.* Plaintiffs have filed such a motion, defendant has opposed it, and plaintiffs have replied.

Plaintiffs' motion supports the observation of the December 22 Memorandum with tangential, but persuasive, authority. In *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), the Supreme Court invalidated a Defense Department order debarring an employee from access to classified information without a hearing at which he would be afforded an opportunity to confront and cross-examine witnesses. The Court ruled that neither Congress nor the President had delegated to the Defense Department the authority to deny petitioner "these traditional and well recognized rights." The Court described these rights with emphasis:

Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue....

*Greene*, 360 U.S. at 496, 79 S.Ct. at 1413. The Court there stated:

[B]efore we are asked to judge whether, in the context of security clearance cases, a person may be deprived of the right to follow his chosen profession without full hearings where accusers may be confronted, it must be made clear that the President or Congress, within their respective constitutional powers, specifically has decided that the imposed procedures are necessary and warranted and has authorized their use.

*Id.* at 507, 79 S.Ct. at 1419. The Court continued:

[Such decisions] must be made explicitly not only to assure that individuals are not deprived of cherished rights under procedures not actually authorized, but also because explicit action, especially in areas of doubtful constitutionality, requires careful and purposeful consideration by those responsible for enacting and implementing our laws. Without explicit action by lawmakers, decisions of great constitutional import and effect would be relegated by default to administrators who, under our system of government, are not endowed with authority to decide them.

Where administrative action has raised serious constitutional problems, the Court has assumed that Congress or the President intended to afford those affected by the action the traditional safeguards of due process.

*Id.* (citations omitted).

The administrative procedure challenged by plaintiffs here raises questions addressed by the Supreme Court in *Greene.* Here, Congress has authorized federal agencies "in accordance with regulations prescribed by the Attorney General, [to] consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States for ... personal injury ... caused by the negligent or wrongful act or omission of any employee of the agency ..." 28 U.S.C. § 2672. Congress has further provided authority for the Secretary of State to "pay tort claims in the manner authorized in ... section 2672, as amended, of Title 28, when such claims arise in foreign countries in connection with Department of State operations abroad." 22 U.S.C. § 2669(f). Congress has thus specifically authorized the

Secretary of State to settle administratively claims of foreign origination.

In response to this statutory authorization, the Secretary of State has promulgated regulations, establishing procedures for the administration of such claims. The regulations, codified in 22 CFR Part 31, have the purpose

> to establish and provide a procedure for the preparation and submission of claims for personal injury ... and to authorize certain officers of the Department of State ... to consider, ascertain, adjust, determine, and settle such claims.

22 CFR 31.1. That chapter provides that

> claims for personal injury may be filed by the injured person, his or her duly authorized agent or legal representative ... [and] [c]laims arising in foreign countries should be prepared in form of a sworn statement....

22 CFR 31.4. The regulations provide that Department of State officials will then conduct an investigation, and either make a payment to the claimant, or send the claimant a final denial notification. Final denial

> shall be in writing and sent to the claimant, his or her attorney, or legal representative by certified or registered mail. Except in the case of claims arising in foreign countries, the notification of final denial shall contain a statement that if the claimant is dissatisfied with the decision, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification.

22 CFR 31.10. Under these regulations, U.S. citizens with claims arising in the United States have the option of filing an action in court within 6 months of the administrative decision, i.e. a plenary bench trial *de novo*. U.S. citizens with claims arising in foreign countries, however, may receive only a notice of final denial, with no statement of reasons, no indication of the evidence relied on, and no list of witnesses interviewed. No statute specifically authorizes any *de novo* trial or judicial review of the denial of a tort claim arising in a foreign country. However, conspicuously absent from 28 U.S.C. § 2672 or 22 U.S.C. § 2669(f), governing administrative action on claims arising abroad, is any provision that purports to preclude or evidences any intention by Congress to deny a claimant protection of the "relatively immutable principle" that administrative action on his claim must be based on fact findings and that "the evidence used to prove the government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Greene*, 360 U.S. at 496, 79 S.Ct. at 1413.

Given that the Department of State is authorized to pay citizens with claims of foreign origination and the Secretary has prescribed regulations to implement the statute and provide agency review for such claims, the right to bring such claims before the agency "cannot be dealt with arbitrarily." *Gerritson v. Vance*, 488 F.Supp. 267 (D.Mass.1980). Furthermore, unless otherwise explicitly indicated by statutory authority, it must be assumed that Congress intended to afford those affected by administrative action the "traditional safeguards of due process." *Greene, supra* 360 U.S. at 507, 79 S.Ct. at 1419. Claimants injured in the United States by the United States have the full panoply of constitutional procedures (other than a jury trial) in a *de novo* action in federal court. 22 CFR 31.10. But even if there is justification for Congress' decision not to submit the United States to *de novo* lawsuits by citizens whom it injures abroad, it does not follow that Congress intended, or could constitutionally intend, that the Executive Branch administer these citizens' claims without recognition of the "relatively immutable principle" that requires disclosure of evidence and "an opportunity to show that it is untrue." *Greene, supra* at 496, 79 S.Ct. at 1413.[1] The due process clause, of course, does not require a trial-type hearing in every instance. What proce-

---

1. Examination of the legislative history of 22 U.S.C. § 2669(f) discloses no indication that Congress intended to deprive citizens with claims of foreign origination of any fundamental due process rights. *See* H.R.Rep. No. 2508, 84th Cong., 2d Sess. 9 (1956) U.S.Code Cong. & Admin.News 1956, p. 4017.

dures are due depends on the nature of the government function involved and the private interest being affected. *Goldberg v. Kelly*, 397 U.S. 254, 262–63, 90 S.Ct. 1011, 1017–18, 25 L.Ed.2d 287 (1970); *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).

The balance here between the private interest affected and the government function involved commands at least some minimal due process procedures. Plaintiffs, a mother employed by the United States in a foreign country and her baby, have a life and liberty interest in being treated safely by United States medical personnel abroad. Furthermore, the administrative provisions created by Congress established at least a right of U.S. citizens injured abroad to bring claims of foreign origination. Defendants, however, have failed to demonstrate in exposition of these regulations or in their application in this case, *any* rational governmental interest in a general rule that precludes citizens injured abroad by the United States from knowing the evidence used against them and that cuts off the constitutional right that plaintiffs here assert. Defendants have alleged no rational relation between the foreign situs of an alleged United States tort against one of its citizens and the refusal to afford that citizen at least a modicum of due process. Nor have defendants alleged any invocation of foreign law or any implication of foreign relations in connection with this matter. Indeed, in a related context, the Supreme Court has vigorously rejected "the idea that when the United States acts against citizens abroad it can do so free of the Bill of Rights." *Reid v. Covert*, 354 U.S. 1, 5, 77 S.Ct. 1222, 1224, 1 L.Ed.2d 1148 (1957) (U.S. citizen not in military entitled to jury trial for murder committed on U.S. military base abroad). *See also Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144 (D.D.C.1976) (Fourth Amendment bars warrantless wiretapping by U.S. Army of U.S. citizens abroad). Absent any specific claim for need of confidentiality, plaintiffs should know the evidence relied on in rejecting their claim and should be given an opportunity to show that it is untrue.

Accordingly, the Secretary must reconsider this claim consistently with minimal due process requirements. While an oral hearing might impose substantial practical problems of locating witnesses and would probably not aid plaintiff significantly in presenting her case, the additional procedure of informing plaintiffs in writing of the evidence relied on in determining the merit of their claim and allowing them the opportunity to show in writing that evidence is untrue would satisfy plaintiffs' procedural rights here.

In reaching this conclusion, the court has carefully considered the Supreme Court opinion in *Lehman v. Nakshian*, 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). That case, involving an age discrimination claim against the government, did not implicate any delegation of authority or promulgation of regulations. This case involves the different question of whether the defendant's application of the regulations governing claims of foreign origination deprive these plaintiffs of a bare constitutional right, as defined in *Greene*. Accordingly, an accompanying order will grant plaintiffs' motion for summary judgment on Count IV of the complaint. Since damages for denial of claimants' procedural rights would plainly be inadequate, an equitable remedy is appropriate. The *Greene* decision suggests the appropriate one: a direction to defendant to reconsider plaintiffs' claims after disclosing to them the evidence relied upon by the Secretary's delegate in denying their claim and to be relied upon in the reconsideration, to afford plaintiffs an opportunity to show that the evidence is untrue, and to make findings of fact or otherwise address the evidence relied upon and to be relied upon by the decisionmaker and any comment or counter submitted by plaintiffs in response to the evidence disclosed to them.

## ORDER

For reasons stated in the accompanying Memorandum, it is this 10th day of May, 1989, hereby

ORDERED: that plaintiffs' motion for summary judgment on Count IV is hereby granted; and it is further

ORDERED: that proceedings on Count I are hereby stayed pending an administrative action on Count IV; and it is further

ORDERED: that defendants shall, on or before September 30, 1989, reconsider plaintiffs' claim in the manner contemplated by the accompanying Memorandum, i.e. (1) disclose to plaintiffs the evidence relied upon in the original denial of their claim and to be relied upon in reconsideration of it, (2) afford plaintiffs an adequate opportunity to comment on and counter that evidence, and (3) make and provide to plaintiffs findings of fact that address the evidence relied upon by the decisionmaker in the original decision and in the reconsideration of it, and any comment or counter submitted by plaintiffs in response to the evidence disclosed to them.