Linda Wheeler **TARPEH–DOE**, et al., Appellees,

v.

**UNITED STATES of America**, et al., Appellants.

No. 89–5210.

United States Court of Appeals, District of Columbia Circuit.

Argued May 7, 1990.

Decided June 8, 1990.

Rehearing and Rehearing En Banc Denied Aug. 13, 1990.

Wilma A. Lewis, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and Craig Lawrence, Asst. U.S. Attys., and H. Rowan Gaither, Atty., U.S. Dept. of State, Washington, D.C., were on the brief, for appellants.

Joseph Michael Hannon, Jr., with whom John Jude O'Donnell and Randall Hunt Norton were on the brief, for appellees.

Before WALD, Chief Judge, and MIKVA and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Dissenting Opinion filed by Chief Judge WALD.

MIKVA, Circuit Judge:

The government appeals the trial judge's order granting partial summary judgment to Linda Wheeler Tarpeh–Doe, and requiring the Agency for International Development to supplement its consideration of Tarpeh–Doe's administrative tort claim with certain procedural protections dictated by the court. Because we conclude that the statutes and regulations governing the consideration of such claims do not, standing alone, generate a protected interest implicating the requisites of due process, we reverse.

I

Appellee Linda Wheeler Tarpeh–Doe, an International Development Intern with the Agency for International Development, was assigned to the U.S. Embassy in Monrovia, Liberia in 1981. On May 18, 1982, appellee gave birth to Nyenpan Tarpeh–Doe II. Shortly after birth, the baby became very ill, and Dr. Lefton, the embassy physician who examined the baby, ordered that the child be evacuated immediately to the United States. Later that day, however, Dr. Lefton had the baby examined by Dr. Van Reken, an American missionary physician, who ordered the baby transferred—over appellee's objections—to a Liberian hospital. Dr. Van Reken also withdrew the order to evacuate the baby. The baby's condition did not improve over the following two weeks, and he was evacuated to the United States on June 17, 1982. The child is presently institutionalized in Denver; he is blind and may suffer permanent brain damage.

Alleging negligence by State Department officials both in Liberia and the United States, appellee filed an administrative claim with the Department of State on January 31, 1984. As part of the ordinary administrative process, appellee's claim was transferred to the Office of the Assistant Legal Adviser for International Claims and Investment Disputes, where the claim was initially reviewed by the Office of Medical Services. A supervisory claims attorney, H. Rowan Gaither, investigated the claim. He conducted interviews with persons familiar with the case, consulted with outside experts, and reviewed relevant documents. Following his investigation, Gaither met with appellee's counsel. The government asserts that Gaither explained at this meeting the government's preliminary conclusions and the reasons supporting them, and told appellee's counsel that the facts did not support appellee's claim for compensation. Gaither then forwarded his recommendation for disposition of this claim to the Assistant Legal Adviser for International Claims and Investment Disputes, Ronald Bettauer. In turn, Bettauer issued a formal denial of appellee's claim in a letter dated October 9, 1987. The letter

contained no legal or factual determinations supporting the Department's conclusion.

Following this administrative denial, appellee brought suit in district court under the Federal Tort Claims Act ("FTCA") against the United States and the Secretary of State. The complaint also alleged that the procedures for deciding appellee's administrative claim violated the due process clause of the fifth amendment.

In two separate orders, the district court dismissed two counts of appellee's four-count complaint. In both orders, the court stated that the State Department's administrative action was an adjudication that implicated the fifth amendment's due process clause. In the second of these orders, the court invited appellee to file a motion for partial summary judgment on her claim that the administrative procedures used by the Department in processing her claim violated due process. Appellee filed this motion, and the district court granted partial summary judgment for the plaintiff in a Memorandum and Order dated May 10, 1989 ("May 10 Order"). 712 F.Supp. 1.

In reaching its decision, the district court recognized that by the terms of the governing regulations, the State Department was not obliged to accord the appellee any procedures beyond those that it had already provided in this case. The court noted that the relevant statutes and regulations do not require the Department to state its reasons, identify the evidence it relied upon, or even list the witnesses that it interviewed in formulating its decision to deny relief. After a full review of this administrative scheme, the district court concluded that the existing procedures for assessing claims against the United States arising in foreign countries violate the

> "relatively immutable principle" that administrative action on [an individual's] claim must be based on fact findings and that "the evidence used to prove the government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."

May 10 order at 3 (quoting *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959)).

In its grant of summary judgment, the court remanded the administrative claim to the State Department for reconsideration, and required the Department to

> (1) disclose to plaintiffs the evidence relied upon in the original denial of their claim and to be relied upon in reconsideration of it, (2) afford plaintiffs an adequate opportunity to comment on and counter that evidence, and (3) make and provide to plaintiffs findings of fact that address the evidence relied upon by the decisionmaker in the original decision and the reconsideration of it, and any comment or counter submitted by plaintiffs in response to evidence disclosed to them.

May 10 Order. In fashioning these procedures, the trial court balanced the appellee's "life and liberty interest in being treated safely by United States medical personnel abroad" against what it found to be the lack of a "rational government interest in a general rule that precludes citizens injured abroad from knowing the evidence used against them and that cuts off the constitutional right that plaintiffs here assert." May 10 Order at 4. The court concluded that

> [a]bsent any specific claim for need of confidentiality, plaintiffs should know the evidence relied on in rejecting their claim and should be given an opportunity to show that it is untrue.

*Id.* at 4.

## II

The legislative and administrative scheme governing appellee's claims begins with the FTCA, which provides in relevant part that

> [t]he head of each Federal agency or his designee, in accordance with regulations prescribed by the Attorney General, may consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States for ... personal injury ... caused

by the negligent or wrongful act or omission of any employee of the agency.... 28 U.S.C. § 2672 (1989). Although the FTCA further provides that the foregoing provisions do not apply to "[a]ny claim arising in a foreign country," 28 U.S.C. § 2680(k), Congress provided in the Act of August 1, 1956 that the Secretary of State may "pay tort claims, in the manner authorized in the first paragraph of section 2672, as amended, of Title 28, when such claims arise in foreign countries in connection with Department of State operations abroad." 22 U.S.C. § 2669(f) (1990).

Pursuant to this authorization, the Secretary of State has promulgated regulations (the "Regulations") establishing procedures for investigating and determining tort claims arising abroad. The Regulations detail the procedures for filing a claim, presenting evidence in connection with a claim, conducting the administrative investigation, and ultimately resolving the claim. *See* 22 C.F.R., Part 31 (1989). The section governing the final denial of claims provides that

> [f]inal denial of an administrative claim shall be in writing and sent to the claimant, his or her attorney, or legal representative by certified or registered mail. Except in the case of claims arising in foreign countries, the notification of final denial shall contain a statement that if the claimant is dissatisfied with the decision, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification.

22 C.F.R. § 31.10. Significantly, apart from the notice of a right of action for claims arising in the United States, this provision establishes no guidelines for the statement of denial. Similarly, the sections governing investigation and determination of claims arising in foreign countries state only that

> a Foreign Service establishment shall make such investigations as may be necessary or appropriate for the determination of the validity of the claim arising outside the United States, and thereafter shall forward the claim, together with all pertinent material, and a recommendation regarding allowance or disallowance of the claim, to the Department for transmission to the requesting agency.
> ....
> Claims will be determined in accord with the applicable statute and the applicable part of this subpart.

22 C.F.R. §§ 31.6(b), 31.7. Thus, the Regulations do not require the official making the final decision whether to allow the claim to accede to the recommendation of the investigating officer.

As noted, the trial judge recognized that neither the governing statutes nor the Regulations directly require any procedures beyond those afforded the appellee in this case. Rather, the court found that the overall structure of the scheme governing the disposition of these claims triggered a *constitutional* right to the additional procedures ordered. Although the Constitution does require some procedural due process protections in proceedings involving constitutionally protected interests, we conclude that the relevant statutes and regulations do not, without more, create an interest that justifies the imposition of the supplemental procedures.

■ The Supreme Court has stated that individuals asserting a constitutional right to certain procedures must demonstrate that they have been deprived of a protected liberty or property interest. Protected interests are those to which a claimant has a legitimate entitlement; a mere expectancy grounded in "an abstract need or desire" is insufficient to trigger the protections of the due process clause. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Court has held that such entitlements may derive from statutes and regulations restricting the exercise of official discretion. Whether a given statutory scheme gives rise to a protected interest depends on whether the authority promulgating the statute or regulation has placed *substantive* limits on official discretion. *See Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). Addressing the limitations necessary to

support such an entitlement, the Court has stated that "the regulations [must] contain 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow...." *Kentucky Dep't of Corrections v. Thompson,* —— U.S. ——, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989).

■ The government contends that because Congress's grant of authority to the Secretary of State to pay tort claims arising abroad was permissive, *see* 22 U.S.C. § 2669(f) ("The Secretary of State *may ...* pay tort claims ... aris[ing] in foreign countries....") (emphasis added), the Secretary's discretion is unbounded and cannot provide the basis for any claimed entitlement to procedures. It is clear that the plain language of § 2669(f) does not give a claimant the right to demand either payment of tort claims or procedures for the consideration of such claims. It is similarly beyond cavil, however, that the Secretary has limited his inherent discretion by promulgating the Regulations. Pursuant to the above-cited Supreme Court precedent, therefore, we must determine whether the Regulations provide criteria for the evaluation of claims which, if met, require the Secretary to pay these claims.

Although the Secretary is not statutorily required to entertain any tort claims arising in foreign countries, he has limited his discretion by providing in the Regulations that if a claimant complies with certain explicit filing requirements, "a Foreign Service establishment *shall* make such investigations as shall be necessary or appropriate for the determination of the validity of the claim...." 22 C.F.R. § 31.6(b) (emphasis added). Following such investigation, the Foreign Service establishment "*shall* forward the claim together with all pertinent material, and a recommendation regarding allowance or disallowance of the claim, to the Department for transmission to the requesting agency." *Id.* (emphasis added). Thus, an individual who properly files a claim is *entitled,* under the Regulations, to have the claim investigated and to have a recommendation regarding the va-

lidity of the claim forwarded to the official who will decide whether to pay the claim.

Unfortunately for the appellee, however, this is where the chain necessary to her claim of entitlement ends. As noted, the Regulations nowhere provide that the decisionmaker must comply with the recommendation prepared by the officer investigating the claim's validity or, alternatively, that the decisionmaker must provide a statement of reasons for not following the investigator's recommendation. We cannot say, therefore, that the Secretary has erred in construing his own Regulations not to *require* the Department to pay claims *even if* the investigator determines that the claim is valid and recommends payment. *Cf. General Carbon Co. v. OSHRC,* 860 F.2d 479, 483 (D.C.Cir.1988) ("An agency's interpretation of its own regulations will be accepted unless it is plainly wrong."). Under this construction, the Regulations fail to restrict sufficiently the decisionmaker's discretion to generate a protected interest implicating the due process clause. Likewise, the Supreme Court has foreclosed appellee's argument that the mere complexity of the Regulations may serve to create an entitlement triggering due process. *See Hewitt v. Helms,* 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) (rejecting the argument that the creation of "a careful procedural structure to regulate the use of administrative segregation ... indicates the existence of a protected liberty interest").

### III

Although the parameters of procedural due process are far from certain, the Supreme Court has directed that one claiming the right to certain procedures under the Constitution must have been deprived of an interest grounded in a legitimate expectation. Here, neither the governing statutes nor the Regulations provide a sufficient basis for the district court's conclusion that the administrative scheme for handling tort claims arising abroad implicates the due process clause and justifies the imposition of the additional procedures the court required in its order.

■ It bears emphasis that we hold only that the language of the statutes and regulations at issue does not, *without more,* support the district court's ruling. We have not been presented with evidence of the Department's past practice in dealing with claims. It is possible, of course, for a legitimate expectation to arise based upon the consistent practice of a decisional body—even in the absence of express regulatory language or in the face of ostensibly contradictory agency policy statements. *See Perry v. Sindermann,* 408 U.S. 593, 601–03, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972).

That the Regulations are prone to misconstruction is beyond doubt. That the "procedure" established by the Regulations is suitable to Lilliput is equally beyond doubt. But, the determination not to create substantive rights or fair procedures or even clear regulations is one for the Secretary to make. Thus, although we share the dissent's discomfort with the result in this case, the foregoing Supreme Court precedent bars this court from ordaining a better result where the Secretary has not established a better process than the Constitution or the governing statute requires.

The decision of the district court is reversed and the matter is remanded to the district court for further proceedings consistent with this opinion.

WALD, Chief Judge, dissenting:

I respectfully dissent from the majority's conclusion that the Regulations governing the handling of Linda Wheeler Tarpeh–Doe's medical malpractice claim do not impose any obligation on the agency to determine her claim on the merits, and in accord with minimal due process.

Although the Secretary of State ("Secretary") is not required under the Federal Tort Claims Act ("FTCA") to entertain tort claims arising in foreign countries, he has, pursuant to authority granted him in a separate statute, 22 U.S.C. § 2669(f), issued Regulations to govern the investigation and determination of foreign claims. *See* 22 C.F.R., Part 31. The majority, however, finds that those Regulations in no way restrict the Secretary's discretion to deny or grant those claims on non-merit grounds. As government counsel candidly admitted at oral argument, the Department of State ("Department") feels that as long as the procedures set out in the Regulations are literally followed, the agency decisionmaker could ultimately decide after years of investigation and thousands of submissions by the claimant whether to grant or deny a claim by merely flipping a coin; thus, they cannot give rise to a protected interest or entitlement implicating the due process clause.

I find such a crabbed reading of the Regulations to make little or no sense. The Regulations need not and should not reasonably be read to permit the Department to deny a meritorious claim for an indefensible reason, or for no reason at all.

Nowhere in the statute or legislative history authorizing settlement of claims is there any indication that Congress intended to permit agencies to act arbitrarily in granting or denying tort claims. Indeed such a suggestion seems so counterintuitive as hardly to merit discussion, even though in fact it is the linchpin of the majority's decision. All indications point in the opposite direction: When Congress provided agencies with the ability to settle FTCA claims administratively, it assumed a merit-based, tort compensation system—a system that would make the United States liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

The FTCA itself was enacted out of a sense that simple justice demanded that individuals be allowed to recover for torts committed against them by the federal government. *See* H.R.Rep. No. 1287, 79th Cong., 1st Sess. 7 (1945);[1] H.R.Rep. No. 2428, 76th Cong., 3d Sess. 8 (1940); *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1962) (Act designed

1. H.R.Rep. No. 1287 accompanied H.R. 181, 79th Cong., 1st Sess. (1945). The FTCA, virtually identical in form, was passed by the Second Session of the 79th Congress as Title IV of the Legislative Reorganization Act of 1946.

in part to avoid injustice to those having meritorious claims hitherto barred by sovereign immunity). In the FTCA's statement of purpose, Congress indicated

> a desire on the part of the federal government in the interests of justice and fair play to permit a private litigant to satisfy his legal claims for injury or damage suffered at the hands of a United States employee acting in the scope of his employment.

*See* Committee on the Office of Attorney General, National Association of Attorneys General, *Sovereign Immunity: The Tort Liability of Government and Its Officials* 43 (1979). Congress clearly intended by the FTCA to create a system through which meritorious claims would be paid. In the 1945 House Report, for example, the Act's proponents said that the existing system of relying on private bills in Congress was unjust "in that it does not accord to injured parties a recovery as a matter of right but bases any award that may be made on consideration of grace." H.R. Rep. No. 1287, 79th Cong., 1st Sess. 2 (1945). The Act's opponents in turn vowed that the members of Congress would be denied the right to determine the merits of a tort claim because that "right and power will be vested in the heads of departments and agencies of Government and in the courts." *Id.* at 13.

This theme of justice, fair play, and merit-based determinations echoes through the later amendments to the FTCA, which authorized administrative settlements. In 1966, for example, Congress authorized agencies to administratively settle tort claims in excess of the previous $2,500 limit in order to provide a "more fair and equitable treatment for private individuals and claimants when they deal with the Government," H.R.Rep. No. 1532, 89th Cong., 2d Sess. 5 (1966), and to enable "claimants who have meritorious claims against the Federal Government to have

them disposed of more expeditiously," by "facilitat[ing] their settlement through the use of administrative law procedures." 112 Cong.Rec. 12,259 (June 6, 1966); 112 Cong.Rec. 14,376 (June 27, 1966). Although there is little legislative discussion of the law extending administrative settlement authority to the Department for foreign-based claims, Congress almost certainly expected the same equity principles to govern the administrative settlement of both foreign and domestic claims. *See* H.R.Rep. No. 2508, 84th Cong., 2d Sess. 9 (1956).

Indeed, the Department in the past has acknowledged publicly its obligations administratively to carry out the justice purposes of the FTCA. A 1983 letter responding to an inquiry from Senator Robert Dole about a constituent's tort claim stated explicitly that the Department has a "responsibility to adjudicate medical negligence claims fairly and objectively." Plaintiffs' Motion for Partial Summary Judgment on Count IV of Amended Complaint, Exhibit A. A fair and objective *adjudication* certainly implies more than a coin flip.

To be sure, Congress originally exempted tort claims arising in foreign countries from the reaches of the FTCA altogether. 28 U.S.C. § 2680(k). But, as the majority and the Department recognize, the Act of 1956 and the promulgation of the Department's own Regulations pursuant thereto now make foreign-originated claims fully cognizable for administrative settlement purposes. *See* 22 U.S.C. § 2669(f);[2] 22 C.F.R. § 31.18. The issue posed starkly by this case is whether those Regulations require the Secretary to pay meritorious claims. I believe that they do; a contrary reading is at best a strained one and at worst a cruelly deceptive one.

In subpart C of the Regulations, the Department authorizes the Secretary to pay tort claims "in the manner authorized in the first paragraph of 28 U.S.C. § 2672, as

---

**2.** 22 U.S.C. § 2669 provides that:

The Secretary of State may use funds appropriated or otherwise available to the Secretary to—

(f) pay tort claims, in the manner authorized in the first paragraph of section 2672, as

amended, of Title 28 of the United States Code when such claims arise in foreign countries in connection with Department of State operations abroad.

amended, when claims arise in foreign countries." 22 C.F.R. § 31.18. Section 2672 in turn provides the authority for settling tort claims by administrative agencies "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred...." Section 31.18 continues with a crucial sentence. It says that,

> the *Federal Tort Claims Act* and Subpart B of this part are applicable to claims filed under the act of August 1, 1956, except that no provision has been made in that act for the institution of suit if a claim is denied.

22 C.F.R. § 31.18 (emphasis added).[3] Thus, critically, the specific part of the Regulations (subpart C) dealing with foreign claims incorporates the principles of the entire FTCA, not just § 2672, with the sole exception of the right of judicial review. And, of course, under § 2674 of the FTCA:

> The United States *shall be liable*, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.

28 U.S.C. § 2674 (emphasis added); *see also Prosser & Keeton on the Law of Torts*, § 131, at 1034 (5th ed. 1984) (describing § 2674 as "general directive" of FTCA). The waiver of sovereign immunity in the FTCA, then, imposes substantive criteria on FTCA determinations that mandate the same result as if a private individual were being sued under similar circumstances. *See* 22 C.F.R. subpart B, § 31.12 (tort claims are allowable under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred).

In sum, then, the Regulations do explicitly and implicitly assume that an administrative claim, foreign or domestic, will be decided on the same legal and equitable principles that govern court determinations.

Otherwise, they must be read as providing superhighway procedures leading nowhere; paper promises designed to sidetrack the intent of Congress and to mislead the supplicant who invokes them. *See, e.g.,* 22 C.F.R. §§ 31.4, 31.6, 31.7. Admittedly, the Regulations do not themselves specify that the ultimate decisionmaker comply with the recommendation prepared by the investigating officer, or, even that the decisionmaker provide a statement of reasons for denying the claim. *See* 22 C.F.R. §§ 31.6, 31.10. Nevertheless, they most definitely do incorporate the principle of § 2674 that liability will attach under similar circumstances as in a private sector claim. And, that is sufficient to provide the kind of entitlement to which minimal due process protections must be accorded. *See Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983).

The Department argues that it must be allowed to take foreign policy interests into account in disposing of foreign tort claims. *See* Supp.Decl. of Ronald J. Bettauer at ¶ 5, J.A. at 97–98. Possibly, the Department could have incorporated some such discretion into its administrative decisionmaking under its Regulations. But, that is not how the Regulations are presently written. Right now, subpart C of the Regulations contains only one exception to the applicability of the FTCA—a foreign tort claimant is not entitled to go to court if a claim is administratively denied. The Regulations most assuredly do not say that a claimant may be led down the yellow brick road of "thorough investigation," only to be faced at the end with a wizard-like administrator flipping coins behind a screen.

I would affirm the district court's imposition of minimum due process procedures on the administrative process by which foreign-based FTCA claims are denied.

---

**3.** The majority discusses these Regulations as they apply to claims arising abroad. However, the main body of the Regulations (subparts A and B) applies to both domestic and foreign claims. Therefore, the majority's interpretation of the Regulations as not giving rise to any expectation of non-arbitrary treatment applies to both domestic and foreign claims, a problematical result at best. Domestic claimants are of course, permitted to try again in district court.