**John R. MacCASKILL, et al., Plaintiffs,**

**v.**

**UNITED STATES of America,
et al., Defendants.**

**Civ. A. No. 92–1754.**

United States District Court,
District of Columbia.

Oct. 12, 1993.

John C. Kiyonaga, Kiyonaga & Kiyonaga, Alexandria, VA, for plaintiffs.

Sally M. Rider, Asst. U.S. Atty., Washington, DC, for defendants.

### MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This is an action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–80, and the Military Claims Act (MCA), 10 U.S.C. §§ 2733–37. Presently before the Court is defendants' motion to dismiss under Federal Rule of Civil Procedure (Fed.R.Civ. P.) 12(b)(1) and 12(b)(6), and alternatively, for summary judgment under Fed.R.Civ.P. 56, contending that the Court lacks subject matter jurisdiction in this case. For the reasons stated herein, we grant defendants' motion for summary judgment.[1]

#### I. *Background*

Plaintiffs are the parents of Corporal John MacCaskill, a Marine guard who died on May 29, 1988 from an apparently self-inflicted gunshot wound.[2] At the time of his death, Cpl. MacCaskill was assigned to the U.S.

---

1. The Court considers this a motion for summary judgment because both parties refer to letter exhibits contained outside the pleadings. *See* Fed.R.Civ.P. 56(c).

2. There appears to be some debate as to whether the wound was self-inflicted. This question, however, is not relevant to the case before the Court.

Embassy in El Salvador. Plaintiffs, who reside in New York State, flew to El Salvador after learning that their son was in serious condition. Upon arrival there, plaintiffs were briefed and escorted by Navy and U.S. Embassy personnel. Two days after his parents arrived, Cpl. MacCaskill died from his injuries and his body was transferred to a private Salvadoran mortuary for processing.

A Department of State (State Department) employee with the U.S. Embassy, Guido Del Prado, was among the officials accompanying plaintiffs to the mortuary. Acting as translator, he informed the MacCaskills that, pursuant to Salvadoran law, the body could not be released for transportation back to the United States until it had been embalmed. Mr. Del Prado presented the plaintiffs with a card printed in Spanish that he indicated had to be signed before the embalming could begin. Mr. Del Prado did not translate the text of the card. Plaintiffs signed the card and the body was duly embalmed and returned to the United States for burial.

Several months after returning to New York, plaintiffs began to question the official finding that the wound was self-inflicted and ordered the body exhumed for a private autopsy. During the autopsy plaintiffs discovered that the mortuary's employees had eviscerated the body and disposed of the internal organs in an unknown fashion. Plaintiffs filed an administrative tort claim with the U.S. Navy seeking damages for the evisceration and any resulting anguish and grief. It is evident from the record that the Navy negotiated possible settlement with plaintiffs' attorney for a year, however, the parties did not agree on a settlement figure.

On December 12, 1991, the Navy denied the claim stating that no Navy personnel had been involved in arranging the embalming and that the FTCA did not apply to claims arising in a foreign country. The Navy subsequently clarified its position in a series of letters with plaintiffs' attorney following administrative appeal of the claims. The Navy determined that plaintiffs failed to show negligence on the part of any Navy employee and that the State Department was responsible for arranging the embalming. Therefore, the Navy forwarded the claim to the State Department, which subsequently denied the claim. Plaintiffs seek relief from these administrative judgments.

## II. *Analysis*

Under Fed.R.Civ.P. 56(c), the moving party has the burden of demonstrating that the record shows there is no genuine issue of material fact, and that it is "entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We believe the defendants have met this burden by proving that the Court lacks subject matter jurisdiction.

### A. *Count I: The Federal Tort Claims Act*

The United States is generally immune from suit, except for situations in which it consents to be sued by expressly waiving its sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Plaintiffs have the burden of establishing jurisdiction under the FTCA, and this burden must be satisfied through a basis independent of the general jurisdictional statutes such as 28 U.S.C. § 1346. *Vogelaar v. U.S.*, 665 F.Supp. 1295, 1297 (E.D.Mich.1987).

Although the FTCA represents a broad waiver of sovereign immunity, Congress expressly excluded certain claims from the district court's jurisdiction. The exclusion relevant to this action is the provision in the FTCA stating that "[t]he provisions of this chapter ... shall not apply to [a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). Claims arising on overseas military bases and embassies of the United States Government occur in foreign countries for purposes of § 2680(k). *See e.g. United States v. Spelar*, 338 U.S. 217, 70 S.Ct. 10, 94 L.Ed. 3 (1949) (claim arising at air base in Newfoundland under long-term lease to the U.S. arose in foreign country); *Broadnax v. United States*, 710 F.2d 865, 867 (D.C.Cir.1983) (allegation of negligent medical care in Army hospital in Germany not cognizable under the FTCA).

A claim "arises" for purposes of § 2680(k) where the alleged negligent act or omission occurred for purposes of 28 U.S.C.

§ 1346(b).[3] *See Vogelaar*, 665 F.Supp. at 1301. It is not in dispute that the underlying claim arose in a foreign country. Cpl. Mac-Caskill died from injuries sustained while stationed in El Salvador and was embalmed there. Any act or omission committed by an employee of the Navy or State Department occurred there. Therefore, the Court ordinarily lacks subject matter jurisdiction over plaintiffs' claim.

■ Plaintiffs contend that § 2680(k) is inapplicable because high level decisions related to this case were allegedly made in the United States. It is correct that courts have occasionally held that high level management and control by domestic government personnel render the United States liable under the FTCA. *See e.g. In re "Agent Orange" Product Liability Litigation*, 580 F.Supp. 1242, 1255 (E.D.N.Y.1984) *appeal dismissed* 745 F.2d 161 (2d Cir.1984) (claims related to the exposure of soldiers to Agent Orange in Vietnam were not barred by § 2680(k) because the initial decision to use the herbicide, the decision to continue using it, and decisions relating to the specifications for Agent Orange were made in the United States). So-called "headquarters claims" are recognized by this Circuit, however, in such limited circumstances that in general,

> unless subject matter jurisdiction can be separately established for those claims truly arising in a foreign country ... it is seldom worth [plaintiffs'] while to try to make a case live or die on the basis of headquarters claims.

*Beattie v. United States*, 756 F.2d 91, 97 (D.C.Cir.1984).[4]

■ Plaintiffs allege that the listing of El Salvador as a "high priority" country make it likely that Cpl. MacCaskill's death would "draw the attention of the highest levels of the U.S. Government." Plaintiffs' Opp. at 19. Plaintiffs make a headquarters claim based on conclusory statements that the apparent suicide of a Marine guard at one of hundreds of government postings overseas would require the State Department's Operations Center in Washington to "closely monitor[ ] and control[ ] the events surrounding the investigation into MacCaskill's death and the handling of his body." *Id.* There is, however, no evidence of such close coordination. The record merely indicates that the U.S. Embassy in El Salvador contacted the Operations Center after the incident. *Id.* at 18. This is not the type of close management and control required for a successful headquarters claim. Accordingly, summary judgment is granted for defendants as to Count I.

### B. *Count II: The Military Claims Act*

■ The Military Claims Act (MCA) is the second possible basis for jurisdiction in this case. The MCA is a congressionally mandated system of compensation delegating to the secretary of each military branch discretion to settle certain tort claims against that branch.[5] 10 U.S.C. § 2733 *et seq.* The MCA expressly excludes judicial review of claims adjudicated under its provisions. 10 U.S.C. § 2735; *see Labash v. United States*, 668 F.2d 1153 (10th Cir.1982) *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982) (§ 2735 contains "clear and convincing evidence" that Congress intended to preclude judicial review of administrative decisions under the MCA).

Plaintiffs contend that judicial review in this case is not precluded by § 2735 because review is still possible for procedural and due

---

3. 28 U.S.C. § 1346(b) states that "the district courts ... have exclusive jurisdiction of civil actions on claims against the United States ... in accordance with the law of the place where the act or omission occurred."

4. The Court in *Beattie* concluded that the headquarters claim was only valid when the negligent act occurred in the United States. *Id.* at 96 (citing *Sami v. United States*, 617 F.2d 755 (D.C.Cir.1979)).

5. The MCA allows the Secretary of the Navy ("Secretary") to settle claims up to $100,000, with appeal to the Judge Advocate General of the Navy. The MCA, unlike the FTCA is applicable to acts or omissions committed overseas. *Vogelaar*, 665 F.Supp. at 1298. Similar provisions grant the Secretary of State the authority to "pay tort claims ... when such claims arise in foreign countries in connection with Department of State operations abroad." 22 U.S.C. § 2669(f); *see also Tarpeh–Doe v. U.S.*, 904 F.2d 719, 722 (D.C.Cir.1990) *cert. denied* 498 U.S. 1083, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991).

process questions.[6] Some courts have held, generally in dicta, that a gross departure from procedural rights might permit some limited review. *See e.g. Broadnax*, 710 F.2d at 867 (review might be permitted when a misconstruction of governing legislation or similar error "go[es] to the heart of the administrative determination"); *see also Labash*, 668 F.2d at 1157 (federal courts may have jurisdiction to review settlement of an MCA claim if a "cognizable constitutional right has been violated").

When actually confronted with such claims, however, the same courts have generally refused to find such exceptions applicable. The U.S. Court of Appeals for the D.C. Circuit, seven years after deciding *Broadnax*, refused to require that the State Department institute any procedural safeguards in handling foreign tort claims beyond the Department's own regulations entitling claimant to an investigation of the claim. In overturning the district court, the Court continued:

> neither the governing statutes nor the Regulations provide a sufficient basis for the district court's conclusion that the administrative scheme for handling tort claims arising abroad implicates the due process clause [or] justifies the imposition of . . . additional procedures.

*Tarpeh–Doe*, 904 F.2d at 723.

▆▆▆ The Court finds the case at bar to be analogous to *Tarpeh–Doe*. Under the MCA, plaintiffs are only entitled to such procedures as the Secretary may prescribe.[7] § 2733(a). The McCaskill claim was investigated and the reasons for denial were presented to plaintiffs who chose to appeal the decision, as permitted by § 2735, to the Judge Advocate General. This was subsequently denied. As to whether the conclusions of the administrative review were correct, this Court has no jurisdiction to determine.[8] *Rodrigue v. United States*, 968 F.2d 1430, 1435 (1st Cir.1992) (an incorrect application of the law of torts by an agency does not violate the Constitution). Plaintiffs' belated allegation that due process was violated similarly fails to raise a cognizable constitutional claim. *See Poindexter v. United States*, 777 F.2d 231, 234 (5th Cir.1985) (overbroad, conclusory statements as to violations of substantive due process do not raise colorable constitutional concerns).

▆▆▆ As a final matter, plaintiffs contend that during the protracted settlement negotiations between the Navy and plaintiffs' attorney the Navy indicated that their claim had merit and that "the Navy was prepared to resolve the claim favorably."[9] Plaintiffs' Opposition to Motion to Dismiss, p. 4. To support this contention, plaintiffs offer certain in a series of letters between counsel. These letters do not indicate that the Navy was prepared to pay a settlement.[10] The letters do indicate that negotiations were in progress and that the Navy sought additional

---

6. Although plaintiffs did not allege due process violations in their complaint, Plaintiffs' Opposition to Motion to Dismiss recharacterizes their claim to allege that the Navy violated plaintiffs' due process by disregarding its regulations.

7. As the Court in *Tarpeh–Doe* held, the Secretary is not statutorily required to entertain any tort claims arising in foreign countries, and any regulations the Secretary chooses to establish to allow claims will not be expanded upon. 904 F.2d at 723. This holding precludes judicial review of the State Department's denial of plaintiffs' claim. The regulations cited in *Tarpeh–Doe* are analogous to those promulgated by the Navy requiring that claims be investigated prior to payment. 32 CFR § 750.14 *et seq.* On a related procedural issue, we believe that the Navy acted properly in not transferring the claim to the State Department until it had made a determination on the validity of the claim. *See* 28 CFR § 14.2(b)(1).

8. Plaintiffs are also prevented from seeking relief under the Administrative Procedure Act (APA). 5 U.S.C. §§ 701–06. It is well settled that the APA does not provide a basis for reviewing an MCA administrative decision. *See Labash*, 668 F.2d at 1155 (§ 701(a)(1) expressly provides that the right of judicial review available under the APA is not available to the extent another statute precludes administrative review).

9. If plaintiffs are attempting to use the settlement negotiations to bolster the validity of their claim, the use of settlement negotiations in this fashion is prohibited by Federal Rule of Evidence 408. It is permissible, however, for such evidence to be used to highlight the allegedly arbitrary way plaintiffs' claim was handled.

10. Plaintiffs' exhibits do not bear out their assertion that the Navy stated it was prepared to settle. *See* LTC Roach, Letter of January 9, 1991, Ex. 4.

information as to medical expenses incurred by plaintiffs.

The mere fact that negotiations occurred does not create liability if the negotiations later fail. This is true even if we accept plaintiffs' representations that during oral negotiations the Navy representative said that he would recommend a settlement. Payment under the MCA is at the discretion of the Secretary, who determined that settlement was not feasible in this case. *See* Plaintiffs' Ex. 8. Accordingly, summary judgment is granted for defendants as to Count II.

### III. *Conclusion*

For the reasons given above, We hold that neither the Federal Tort Claims Act nor the Military Claim Act confer subject matter jurisdiction over this action and the Court cannot examine the merits of the case. We therefore grant defendants' motion for summary judgment. An order consistent with this opinion has been entered this day.

### *ORDER*

Upon consideration of Defendants' Motion To Dismiss, or in the Alternative for Summary Judgment, the oppositions, the replies thereto, and upon consideration of the entire record herein, it is, this 12th day of October, 1993, hereby

ORDERED that Defendants' Motion for Summary Judgment is granted; and it is·

ORDERED that this case is dismissed with prejudice.