**CHEMICALS FOR RESEARCH AND INDUSTRY, a California Corporation, Plaintiff,**

v.

**Richard THORNBURGH, Attorney General of the United States, Robert C. Bonner, Administrator, Drug Enforcement Administration, Ronald J. Caffrey, Deputy Assistant Administrator for Operations, Drug Enforcement Administration, Defendants.**

**No. C–91–0578 EFL.**

United States District Court, N.D. California.

April 29, 1991.

Thomas Steel, San Francisco, Cal., for plaintiff.

George C. Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LYNCH, District Judge.

Plaintiff, Chemicals for Research and Industry, Inc. ("CFRI"), has initiated the above-captioned action challenging the constitutionality of certain actions taken by defendants [1] as well as challenging the constitutionality of a 1988 amendment to section 310 of the Chemical Diversion and Trafficking Act ("the CDTA"), 21 U.S.C. § 830(b), or in the alternative, the constitutionality of defendants' interpretation and application thereof. Plaintiff, in its complaint, prays for declaratory and injunctive relief.

On April 12, 1991, plaintiff moved the Court for a preliminary injunction that would rescind certain actions taken by defendants and enjoin defendants from repeating or taking certain actions in the future. For the reasons stated below, the Court grants plaintiff's motion for preliminary injunction and orders preliminary injunctive relief as set forth below.

## I. FACTUAL BACKGROUND

Plaintiff is a corporation in the business of distributing new and surplus chemicals as well as new and used laboratory equipment. Defendants' agents suspect that chemicals sold by plaintiff have been diverted to use at illegal methamphetamine manufacturing laboratories. Defendants have notified five chemical suppliers who have sold chemicals to plaintiff in the past that they may no longer sell certain chemicals to plaintiff.[2] The chemicals that the

---

1. While defendant Ronald J. Caffrey, the Drug Enforcement Administration's Deputy Assistant Administrator for Operations, appears to have performed the acts to date that plaintiff alleges are unconstitutional, the Court for simplicity refers to the defendants collectively. The Court notes that plaintiff is praying for injunctive and declaratory relief rather than money damages and that the requirements of causation are lessened when a plaintiff is not requesting money

damages. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.1988).

2. Defendants notified the suppliers, in writing, that "you may not complete any transaction in a listed chemical with [plaintiff]" and that the "[t]he prohibition against furnishing listed chemicals to [plaintiff] shall remain in effect until you have been given written notice of its recision or until you have been given written

five suppliers may no longer sell to plaintiff ("the listed chemicals") are, for the most part, relatively common chemicals that have many legitimate uses but may also be used to manufacture illegal drugs.[3] Defendants cite 21 U.S.C. section 830(b) as authority for their action. Defendants have not afforded plaintiff a *formal* hearing regarding defendants' actions or any type of procedural due process.[4]

## II. STANDARDS FOR ISSUANCE OF PRELIMINARY INJUNCTION

██ In order to determine whether a preliminary injunction shall issue, the Court must make two inquiries. First, the Court must inquire as to whether plaintiff might suffer irreparable injury if the Court fails to issue a preliminary injunction. *United States v. Odessa Union Warehouse Co-op.*, 833 F.2d 172, 174 (9th Cir. 1987). Second, the Court must inquire as to whether plaintiff will probably succeed on the merits. *Id.* If the Court determines that plaintiff might suffer irreparable injury if the Court fails to issue a preliminary injunction and the Court determines that plaintiff will probably succeed on the merits, the Court shall issue a preliminary injunction.[5] The Court addresses each of these inquiries in turn.

approval for a specific transaction [by defendants]."

3. The listed chemicals are enumerated at 21 U.S.C. section 802(34) and (35).

4. Apparently, plaintiff's agents and defendants' agents met face to face on January 10, 1991, an event which defendants characterize as an informal hearing. *See* section III.B.2. for further discussion of this meeting.

5. Alternatively, a preliminary injunction may issue if "serious questions are raised and the balance of hardships tips in [the moving party's] favor." *United States v. Odessa Union Warehouse Co-op.*, 833 F.2d 172, 174 (9th Cir.1987). The Court need not apply the "serious issues/balance of hardships test," however, because the Court finds that plaintiff has met its burden under the "possibility of irreparable injury/probability of success on the merits test."

6. The president of plaintiff CFRI, Adam Glickman, has submitted a declaration in which he

## III. DISCUSSION

### A. *Possibility of Irreparable Injury*

██ The Court finds that there is a good possibility that plaintiff will suffer irreparable injury if a preliminary injunction does not issue. Plaintiff has submitted evidence from which one may infer that plaintiff will lose sales if a preliminary injunction does not issue.[6] Moreover, plaintiff contends that it is barred by applicable case law from seeking monetary damages. Defendants, without conceding that plaintiff has suffered or will suffer damages, agrees that if plaintiff has suffered or were to suffer damages, plaintiff would be barred from seeking monetary damages. Since monetary damages do not appear to be a remedy that is available to plaintiff, the Court has little difficulty in finding that plaintiff might suffer irreparable injury if an injunction does not issue.

### B. *Probability of Success on the Merits*

██ For the reasons stated below, the Court also finds that plaintiff will probably succeed on the merits. First, defendants' actions do not appear to be authorized by statute. Second, if the statute were interpreted in such a manner as to authorize defendants' actions, the statute would not appear to comport with the requirements of

states that "[plaintiff] has now completely exhausted its supplies of many of the listed chemicals and its business has been seriously damaged by its inability to supply its customers with [the listed] chemicals."

Ideally, the Court would have preferred that Mr. Glickman or another of plaintiff's employees set forth with greater specificity the facts from which one could infer that plaintiff stands to suffer injury. For example, an employee of CFRI might have been able to list plaintiff's past sales of the listed chemicals and state that plaintiff is not able to obtain these chemicals from any sources other than those who may not sell listed chemicals to plaintiff pursuant to defendants' notification.

The Court, however, is able to infer future injury from Mr. Glickman's declaration that plaintiff "has now completely exhausted its supplies of many of the listed chemicals" and his declaration that plaintiff is not able "to supply its customers with [these chemicals]."

the due process clause of the fifth amendment. At best, it would appear to the Court, at this juncture, that it would be necessary to add judicial gloss to the statute so that entities and individuals in plaintiff's position would be afforded constitutionally sufficient procedural due process.

### 1. Statutory Authorization

It appears unlikely that 21 U.S.C. section 830(b) authorizes the actions that defendants have taken with respect to plaintiff's suppliers. Section 830(b) in its entirety reads as follows:

(b) Reports to Attorney General

Each regulated person shall report to the Attorney General, in such form and manner as the Attorney General shall prescribe by regulation—

(1) any regulated transaction involving an extraordinary quantity of a listed chemical, an uncommon method of payment or delivery, or any other circumstance that the regulated person believes may indicate that the listed chemical will be used in violation of this subchapter;

(2) any proposed regulated transaction with a person whose description or other identifying characteristic the Attorney General furnishes in advance to the regulated person;

(3) any unusual or excessive loss or disappearance of a listed chemical under the control of the regulated person; and

(4) any regulated transaction in a tableting machine or an encapsulating machine.

Each report under paragraph (1) shall be made at the earliest practicable opportunity after the regulated person becomes aware of the circumstance involved. *A regulated person may not complete a transaction with a person whose description or identifying characteristic is furnished to the regulated person under paragraph (2) unless the transaction is approved by the Attorney General.* The Attorney General shall make available to regulated persons guidance documents describing transactions and circumstances for which re-

ports are required under paragraph (1) and paragraph (3).

21 U.S.C. § 830(b) (emphasis added). The sentence upon which defendants rely, underscored above, was not a part of the original bill, H.R. 5210, but was added as an amendment.[7] Apparently, this amendment was enacted hastily, and the legislative record is devoid of any indication of the amendment's purpose. Plaintiff has come forward, however, with a declaration executed by Eric E. Sterling, a member of the House Judiciary Committee Staff at the time that the amendment was passed. Mr. Sterling declares that he drafted the sentence at issue in order to embrace what he thought was the congressional intention of providing a mechanism "to delay sales [to certain individuals] so that [law enforcement officials] could prepare 'sting' operations."

While the *ex post* declaration of a congressional staff member, even one who drafted the statutory language at issue, may not necessarily be deserving of great weight in determining congressional intent, this Court agrees with Mr. Sterling's interpretation. First, it is clear from the language of section 830(b) as a whole that section 830(b)'s primary purpose was to provide information to law enforcement agencies so that traditional law enforcement mechanisms might work more effectively. Interpreting the sentence at issue to authorize the Attorney General to delay a specific transaction until a sting operation can be prepared is entirely consistent with this purpose. Interpreting the sentence at issue to authorize an across the board ban on domestic transactions involving certain individuals is not consistent with this purpose.

Second, another section of the CDTA that the parties agree was intended to provide for the interdiction of imports and exports of listed chemicals—rather than the interdiction of domestic sales as in the case at bar—bears no resemblance at all to 21 U.S.C. section 830(b). Title 21 U.S.C. section 971(c) provides that "[t]he Attorney

---

7. H.R. 5210, later denominated Pub.L. 100–690, in turn amended the CDTA.

General may order the suspension of any importation or exportation of a listed chemical ... or may disqualify any regular customer or regular supplier on the ground that the chemical may be diverted to the clandestine manufacture of a controlled substance." Moreover, section 971(c) provides that "the Attorney General must provide written notice of the order (including a statement of the legal and factual basis for the order)" and must provide "an agency hearing on the record in accordance with [the Administrative Procedures Act]" if such a hearing is requested. 21 U.S.C. § 971(c). The Court believes that if Congress had intended for section 830(b) to authorize the interdiction of domestic sales of listed chemicals, it probably would have used the same language as it did in section 971(c) and provided for the same procedural safeguards as it did in section 971(c).

■ Finally, the Court has grave concerns as to whether section 830(b) is constitutional as it is being interpreted and applied by defendants. As discussed in section III.B.2. below, defendants' interpretation of section 830(b) probably runs afoul of the due process clause of the fifth amendment. If the Court is forced to choose between an interpretation of a statute that is constitutional and an interpretation of the same statute that is unconstitutional, the constitutional interpretation is favored. *Ellis v. Brotherhood of Railway, Airline & Steamship Clerks*, 466 U.S. 435, 444, 104 S.Ct. 1883, 1890, 80 L.Ed.2d 428 (1984). Plaintiff's interpretation—that the statute authorizes the attorney general to cause a brief delay in a transaction while a "sting" is prepared—is far more likely to be constitutional than defendant's interpretation—that the statute authorizes an across the board interdiction without a hearing. Accordingly, plaintiff's interpretation is favored.

In sum, section 830(b) does not appear to authorize the actions that defendants have taken. Defendants, to date, have not argued that the authority for their actions lies anywhere other than in section 830(b). While defendants' actions may be based on a good faith concern for the public interest,

legal authority for executive action is an essential tenet of our form of government which is predicated on the rule of law rather than rule by fiat. Accordingly, the Court finds it probable that plaintiff will prevail with respect to its argument that defendants' actions are not authorized.

2. Procedural Due Process

It also appears unlikely that defendants' interpretation and application of 21 U.S.C. section 830(b) passes fifth amendment due process review. The Court finds the case of *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), quite persuasive. In *Constantineau*, the Supreme Court considered the constitutionality of a Wisconsin statute that made it illegal to sell alcohol to those individuals who local officials considered to be "dangerous to the peace of [the] community" or otherwise unworthy of purchasing alcohol. *Id.* at 434–35 n. 2, 91 S.Ct. at 508–09 n. 2. The Court held that those so stigmatized were entitled to notice and a hearing. *Id.* at 436, 91 S.Ct. at 509. Since the statute did not provide for notice and hearing, the Supreme Court struck the statute. *Id.* at 439, 91 S.Ct. at 511.

The Court finds that plaintiff's situation is probably analogous to that in *Constantineau*. One who is labeled not worthy of being trusted with common chemicals that have both legitimate and illegitimate uses is severely stigmatized and, under the holding of *Constantineau*, would appear to be entitled to some sort of notice and hearing.

Defendants respond by arguing that even if plaintiff was entitled to a hearing, plaintiff in fact received a hearing. Specifically, defendants argue that a meeting between plaintiff and defendants' agents that took place on January 10, 1991, constituted sufficient due process. Defendants contend that at the meeting, defendants' agents fully explained to plaintiff's agents why defendants had acted as they had and that plaintiff's agents had an opportunity to represent plaintiff's position. Plaintiff characterizes the meeting somewhat differently.

 

While the Court agrees with defendants that procedural due process is a flexible concept, *see Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), the Court is not likely to find that this meeting, even if the Court accepts defendants' characterization of the meeting, constitutes sufficient due process. The stigma that has attached to plaintiff is extreme—arguably tantamount to the stigma of being criminally prosecuted. The Court believes that a formal hearing before an independent tribunal such as an administrative law judge is probably required when such stigma attaches.

The issue is not whether defendants acted in good faith. Rather the issue is whether plaintiff has been afforded procedural due process as guaranteed by the fifth amendment of the Constitution. The Court today holds that plaintiff has probably not received constitutionally sufficient due process. Accordingly, the Court finds that plaintiff will probably succeed in arguing that defendants' interpretation and application of section 830(b) violates the fifth amendment.[8]

## IV. CONCLUSION

The Court finds that plaintiff has demonstrated a possibility of irreparable injury and a probability of success on the merits.[9] Accordingly, IT IS ORDERED that:

Defendants shall rescind the "Notices Prohibiting Completion of Certain Regulated Transactions" that to date have been issued to plaintiff's domestic suppliers of chemicals. Furthermore, defendants shall refrain from issuing further such notices to plaintiff's domestic suppliers of chemicals until further order of the Court. Today's order does not prevent defendants from delaying domestic transactions involving plaintiff until such reasonable time as a "sting" operation can be prepared.

The Court shall hold a telephonic status conference on Tuesday, May 21, 1991, at 9:15 A.M. at which time the Court will inquire of the parties whether they believe that the submission of additional briefs, evidence and/or a trial is necessary in order to reach a final disposition with respect to this action.

IT IS SO ORDERED.

8. The issue of whether plaintiff may argue the constitutionality of a statute that does not provide for due process on its face even if plaintiff in fact received due process has not been briefed for the Court.

9. The Court emphasizes that the Court has held neither that defendants' actions are unauthorized nor that defendants' interpretation and application of section 830(b) violates the fifth amendment. Rather, the Court today holds that plaintiff .will *probably* succeed with respect to these two arguments.